# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THOMAS BRADLEY FREDERICK and THOMAS LEROY FREDERICK,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, RISK MANAGEMENT AGENCY, and FEDERAL CROP INSURANCE CORPORATION,<br><br>    Defendants. | Civil No._____<br><br><br>**COMPLAINT** |

## INTRODUCTION

NOW COME Plaintiffs, by and through the undersigned counsel, and for their action against Defendants, allege as follows:

1. This is an action for judicial review of a final agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq*., arising from a final determination issued by Defendants through Defendant Risk Management Agency ("RMA"). The determination that is the subject of this action consists of the Informational Memorandum: PM-20-062 issued by the RMA on August 31, 2020 (the "RMA Memorandum"), in which RMA identified the counties in North Carolina triggered for payment under the 2020 Crop Year Hurricane Insurance Protection – Wind Index (HIP-WI) Endorsement to the 2020 Common Crop Insurance Policy following Hurricane Isaias.

2. Plaintiffs seek a holding by the Court that the RMA Memorandum was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law; was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and, was without

observance of procedure required by law. Plaintiffs further seek an order directing that the RMA Memorandum be set aside and that RMA be compelled to issue a new determination consistent with the Court's decision in this matter.

## PARTIES

3. Plaintiffs Thomas Bradley Frederick and Thomas Leroy Frederick are citizens and residents of Duplin County, North Carolina. At all times relevant, including all of 2020, Plaintiffs have owned and operated farming operations on land situated in Duplin County, North Carolina.

4. Defendant United States Department of Agriculture ("USDA") is a department of the United States of America and is the parent department of Defendant RMA, which in turn administers Defendant FCIC.

5. Defendant Federal Crop Insurance Corporation ("FCIC") is a wholly government-owned corporation created by the Federal Crop Insurance Act, 7 U.S.C. §1501, *et. seq.* (the "FCIA"), which is administered by the USDA through the RMA.

6. Defendant Risk Management Agency ("RMA") is an agency of the USDA created by the Federal Agriculture Improvement and Reform Act of 1996, 7 U.S.C. §6933, *et. seq.,* whose functions include administering the FCIC and making final determinations concerning crop insurance policies and endorsements thereto. At all times relevant, RMA acted as the agent of USDA and FCIC with regard to the matters set forth herein.

## JURISDICTION AND VENUE

7. Plaintiffs' cause of action arises from Defendant RMA's adverse action in issuing the RMA Memorandum, a final determination issued while administering the HIP-WI Endorsement to the 2020 Common Crop Insurance Policy.

8. Plaintiffs' administrative remedies were fully exhausted as of October 2, 2020, when Defendant USDA's National Appeals Division, by and through its Acting Deputy Reginal Director Amanda M. Urbanek, determined that the RMA Memorandum was not adverse to Plaintiffs as individual participants but was a matter of general applicability, and, therefore, was not subject to further administrative review within USDA's National Appeals Division pursuant to Title 7 of the Code of Federal Regulation (7 C.F.R.) Part 11. An accurate and complete copy of Plaintiffs' NAD Appeal Requests and NAD's Appeal Decision Letters to Plaintiffs are marked respectively as **Exhibits A through D,** attached hereto and incorporated herein by reference.

9. This Court has jurisdiction over the subject matter of this action by virtue of 5 U.S.C. § 701, *et seq.*; 7 U.S.C. § 1506(d); 7 U.S.C. § 6999; 28 U.S.C. § 1331; and, 28 U.S.C. § 2201. Sovereign immunity has been waived by Defendants pursuant to 5 U.S.C. § 702 and by 7 U.S.C. § 6999.

10. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(e), 28 U.S.C. § 1402 (a)(1), and 7 U.S.C. § 1506(d) because the events giving rise to the claims herein occurred within this judicial district, Plaintiffs reside in this judicial district, and the insured farms are located within this judicial district. Further, the terms of the Common Crop Insurance Policy for 2020 include a forum selection clause, which selects the federal district court where the subject farm is located.

## FACTS

11. At all relevant times, Plaintiffs owned and operated farming operations in Duplin County, North Carolina.

12. For the first time, in 2020, the FCIC offered an endorsement to the Common Crop Insurance Policy that would protect insured farmers from damage caused by hurricane strength

3

winds, which the FCIC labeled the "2020 Crop Year Hurricane Insurance Protection-Wind Index (HIP-WI) Endorsement" (the "HIP-WI Endorsement").

13. Upon information and belief, prior to offering the HIP-WI Endorsement, FCIC and/or RMA published maps illustrating how the HIP-WI Endorsement would have applied to past hurricane events had it been in place at the time, and a list of corresponding counties that would have been covered by the HIP-WI Endorsement. Upon information and belief, these maps were prepared by FCIC and/or RMA with the intention that they be shared with farmers such as Plaintiffs for the purpose of inducing these farmers into purchasing the HIP-WI Endorsement. This included a map prepared by FCIC and/or RMA for Hurricane Matthew (the "Hurricane Matthew Map"). The Hurricane Matthew Map showed points on a map of the eastern United States seaboard illustrating the path of Hurricane Matthew, with certain data points labeled as hurricane strength points, and a final data point showing the first tropical storm point following the last hurricane strength point. The tropical storm point was circled and included in the "Area of Extent", which is the area for "Affected Counties", i.e., counties which would be triggered for payment under the HIP-WI Endorsement. An accurate and complete copy of the Hurricane Matthew Map is marked as **Exhibits E**, attached hereto, and included herein by reference.

14. For crop year 2020, each Plaintiff purchased crop insurance that included the HIP-WI Endorsement. Plaintiffs' crop insurance, including the HIP-WI Endorsement, was reinsured by the FCIC under the provisions of the FCIA. An accurate and complete copy of the Common Crop Insurance Policy for crop year 2020 and the HIP-WI Endorsement are marked respectively as **Exhibits F and G**, attached hereto and incorporated herein by reference.

15. The HIP-WI Endorsement provided Plaintiffs with insurance against loss incurred by hurricane force winds in the event that Duplin County or an adjacent county was included as a

"triggered county" during a hurricane event. The terms of the HIP-WI Endorsement required RMA to determine the triggered counties following a hurricane event "in accordance with the Hurricane Data Provisions (HDP)."

16. The Hurricane Data Provisions ("HDP") is defined in the HIP-WI Endorsement as, "A document that describes the methodology utilized by RMA, incorporating NOAA hurricane data, that identifies a county subjected to sustained hurricane force winds, and any county adjacent to that county." An accurate and complete copy of the HDP published by RMA for the 2020 Crop Year (the "2020 HDP") is marked **as Exhibit H**, attached hereto, and incorporated herein by reference.

17. Under the HIP-WI Endorsement, if a county is "triggered" by a hurricane event according to the methodology set forth in the HDP, insured participants in that county are entitled to receive payment as set out in the HIP-WI Endorsement.

18. The HDP incorporates hurricane data published by the National Oceanic and Atmospheric Administration ("NOAA") through the International Best Track Archive for Climate Stewardship ("IBTrACS") following a hurricane event.

19. Based on the foregoing, RMA was required to publish its methodology for determining triggered counties in the HDP, and then utilize the methodology published in the HDP following a hurricane event to determine the triggered counties.

20. RMA must publish its methodology for determining triggered counties for purposes of the HIP-WI Endorsement in the HDP.

21. RMA may not utilize a methodology for determining triggered counties for purposes of the HIP-WI Endorsement following a hurricane event that is not included in the HDP in effect at the time of the hurricane event.

22. According to IBTrACS, on August 4, 2020, Hurricane Isaias made landfall near North Myrtle Beach, South Carolina, at approximately 3:00 a.m. as a Category 1 hurricane, with wind speeds measured at 67 knots. This location was the last hurricane strength point reported by IBTrACS. A wind speed of 64 to 82 knots is considered a Category 1 hurricane. A wind speed of 34 to 63 knots is a tropical storm.

23. After making landfall, Hurricane Isaias proceeded directly towards Duplin County. At 6:00 a.m., IBTrACS reported Hurricane Isaias to be located in central Duplin County, near Warsaw, with wind speeds measured at 60 knots. This location was the first tropical storm point for Hurricane Isaias reported by IBTrACS.

24. Plaintiffs sustained damage to their crops as a result of Hurricane Isaias.

25. Because the first tropical storm point following the last hurricane strength point was located in Duplin County, Duplin County should have been included as a triggered county under the HIP-WI Endorsement following Hurricane Isaias by RMA, but was not. Instead, upon information and belief, RMA identified Bladen County as the last triggered county. This also resulted in Sampson County being excluded as a triggered county, although it was identified as a county adjacent to a triggered county.

26. According to the 2020 HDP:

> The storm center points used to determine the trigger counties are those where the hurricane strength is greater than or equal to a Category 1 (USA_SSHS>= 1), <u>as well as one tropical storm (USA_SSHS= 0) point that directly follows the last hurricane strength point on land</u>. This last point is used to cover the time between the 3-hour interval of the last hurricane point. The storm center points are projected in a continental USA Albers Equal-Area projection.
> …
> The wind extent <u>for the final storm center point (the storm center point that directly follows the last hurricane strength center point) is calculated at 50 percent of the maximum wind extent from the preceding hurricane strength center point</u>.
> …

When the storm center points and corresponding hurricane buffers are calculated, in the result is a series of (often overlapping) circles. Line segments are then drawn between each pair of hurricane buffers that are tangent to both hurricane buffers to develop a smoothed area of wind extent. The smoothed area of wind extent is determined as either the tangent lines or the tangent lines and arcs of the wind buffers, whichever is more distant from the storm center points.
…
The smoothed area of wind extent is then applied to the continental USA Albers Equal-Area projection. Any county that intersects the smoothed area of hurricane wind extent is determined to be a trigger county. Any counties adjacent to counties that intersect the smoothed area of hurricane wind extent (based on the US census counties dataset) are also determined to be trigger counties. (Emphasis added.)

27. The 2020 HDP includes an illustration of the methodology described therein, which shows that the first tropical storm point after the last hurricane strength point is included in the "smoothed area of hurricane wind extent". Here is the illustration from the 2020 HDP, which shows the inclusion of the first tropical storm point:



**Figure 1.** Illustration from "Hurricane Data Provisions (HPD) 2020 and Succeeding Crop Years"

28. When applying the formula in the 2020 HDP and the 2020 HDP illustration to Hurricane Isaias, the last point circled would be near Warsaw, in Duplin County, North Carolina,

because it is the first tropical storm point after the last hurricane strength point. An illustration of the properly applied HDP formula to Hurricane Isaias looks like this:



**Figure 2.** NOAA's IBTrACS for 2020 Hurricane Isaias. An expanded copy is attached hereto as **Exhibit I**.

29. According to the 2020 HDP, Duplin County and Sampson County should be included in the triggered counties for Hurricane Isaias. The farmers who purchased the HIP-WI Endorsement located in Duplin County, and the northern adjacent counties of Jones County, Lenoir County, Wayne County, and Onslow County, as well as Harnett and Johnston as adjacent counties to Sampson, should have received payment under the HIP-WI Endorsement.

30. On August 31, 2020, RMA published Information Memorandum: PM-20-062 (the "RMA Memorandum"), which listed counties that RMA determined were triggered by Hurricane Isaias under the HIP-WI Endorsement. An accurate and complete copy of the RMA Memorandum is marked as **Exhibit J**, attached hereto, and incorporated herein by reference.

31. The RMA Memorandum excluded Duplin County and the adjacent counties of Jones County, Lenoir County, Wayne County, and Onslow County that would be triggered if

Duplin County were included, as well as Harnett and Johnston Counties, as adjacent counties to Sampson.

32. Upon information and belief, the triggered counties included in the RMA Memorandum were based upon a map prepared and produced by RMA for Hurricane Isaias (the "Hurricane Isaias Map"). The Hurricane Isaias Map and the RMA Memorandum failed to properly apply the methodology in the 2020 HDP because RMA excluded the first tropical storm point following the last hurricane strength point. Here is a picture of the Hurricane Isaias Map:



**Figures 3 and 4.** RMA's HDP Map for Hurricane Isaias; Enlargement of a portion of RMA's HDP Map for Hurricane Isaias. An expanded copy is attached hereto as **Exhibit K.**

33. In preparing the Hurricane Isaias Map and RMA Memorandum, RMA used an arbitrary, unknown, and unreported point, somehow placed by RMA between the last hurricane point and the first tropical storm point reported by IBTrACS, to determine the last point of the "smoothed area of wind extent" as referenced in the 2020 HDP. In doing so, RMA failed to utilize the methodology set forth in the 2020 HDP, which is specifically required by the HIP-WI

Endorsement. The point used by RMA to determine the last point of the "smoothed area" is not a point reported by IBTrACS, as required by the HIP-WI Endorsement and the 2020 HDP, and did not include the first tropical storm point following the last hurricane point, which is required by the 2020 HDP.

34. As a result of the incorrect and arbitrary point utilized by RMA to prepare the RMA Memorandum and Hurricane Isaias Map, RMA excluded Duplin County, Jones County, Lenoir County, Wayne County, Onslow County, Harnett County, and Johnston County as trigger and adjacent counties, and these counties should have been included in the RMA Memorandum following Hurricane Isaias under the HIP-WI Endorsement and the 2020 HDP.

35. Plaintiffs and others similarly situated in the affected counties have been unable to make a claim under the HIP-WI Endorsement, and have been substantially damaged as a result of the RMA Memorandum and its corresponding Hurricane Isaias Map.

36. RMA has determined triggered counties for purposes of the HIP-WI Endorsement following hurricane events in an arbitrary and inconsistent manner.

37. When analyzing triggered county maps produced by RMA following other hurricane events, one can see that at times RMA appears to have properly utilized the 2020 HDP methodology, and at other times RMA has failed to do so. For example, RMA produced a map showing how it applied the 2020 HDP methodology to Hurricane Douglas in Hawaii (the "Hurricane Douglas Map"), which made landfall on August 9, 2020. RMA's Hurricane Douglas Map properly included the first tropical storm point after the last hurricane storm point. Here is RMA's Hurricane Douglas Map:



**Figure 5.** RMA's HDP Map for Hurricane Douglas. An expanded copy is attached as **Exhibit L**.

38. At other times, RMA has produced maps of triggered counties following hurricane events that do not include the first tropical storm point after the last hurricane strength point. See for example the RMA maps for Hurricanes Hanna, Laura and Sally (which includes half of the tropical storm point) attached respectively as **Exhibits M through O**.

39. On September 30, 2020, RMA issued a revised HDP for the 2021 and succeeding crop years (the "Revised HDP"). The Revised HDP included a new methodology for the calculation of the area of wind extent, and thus triggered counties, stating in part that "RMA will calculate a storm center point between the last tropical storm center point and the first hurricane center point (i.e. when a tropical storm strengthens to a hurricane) and another storm center point between the last hurricane center point and the first tropical storm center point (i.e., when a hurricane weakens to a tropical storm)." RMA has referred to this new methodology as "interpolation." The methodology in the Revised HDP is different from, and inconsistent with, the

methodology in the 2020 HDP because the 2020 HDP required the inclusion of the first tropical storm point following the last hurricane strength point and the Revised HDP specifically excludes said point. An accurate and complete copy of the revised HDP is marked **Exhibit P**, attached hereto, and incorporated herein by reference.

40. The Revised HDP specifically states that it is for "2021 and Succeeding Crop Years"; however, upon information and belief, RMA has at times, including for Hurricane Isaias, used the Revised HDP's methodology, and not the 2020 HDP's methodology, to determine triggered counties for 2020 hurricane events, in violation of the HIP-WI Endorsement and applicable law.

41. For example, RMA published a map of triggered counties for Hurricane Delta, which made landfall on October 18, 2020 (the "Hurricane Delta Map"). The Hurricane Delta Map shows a point labeled as "Interpolated Center Point" between points labeled "Last Hurricane Point" and "1st Tropical Storm Point." The Hurricane Delta Map and the Hurricane Isaias Map both illustrate that RMA is wrongfully using the methodology in the Revised HDP to 2020 hurricane events instead of the 2020 HDP. An accurate and complete map of the Hurricane Delta Map is marked **Exhibit Q**, attached hereto, and incorporated herein.

## CLAIM FOR RELIEF

42. The allegations of paragraphs 1 through 41 are hereby realleged and incorporated herein by reference as if fully set forth herein.

43. The RMA Memorandum constitutes a final agency action and is subject to judicial review pursuant to 5 U.S.C. §701, *et seq*.

44. The HIP-WI Endorsement is a contract between Plaintiffs and the approved insurance provider who issued it, which is reinsured by FCIC.

45. The provisions of the HIP-WI Endorsement clearly and unambiguously require RMA to publish the methodology for determining triggered counties in the HDP, and then utilize the methodology published in the HDP to determine triggered counties after a hurricane event.

46. The clear and unambiguous methodology contained in the 2020 HDP requires that RMA use the first tropical storm point that follows the last hurricane strength point as the last storm center point to determine the area of wind extent and thus the triggered counties.

47. RMA failed to comply with the clear and unambiguous terms of the HIP-WI Endorsement and the 2020 HDP when it published the RMA Memorandum.

48. The RMA Memorandum was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law; was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and, was without observance of procedure required by law.

49. As such, this Court should declare the RMA Memorandum to be unlawful, set it aside, and compel RMA to issue a new determination of triggered counties for Hurricane Isaias to include Duplin County Sampson County, and the adjacent counties of Jones County, Lenoir County, Wayne County, Onslow County, Harnett and Johnston.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray unto the Court that:

1. The Court enter a judgment holding that the RMA Memorandum was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law; was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and, was without observance of procedure required by law;

2. The Court enter a judgment setting aside the RMA Memorandum and compelling Defendants to issue a new determination of triggered counties for Hurricane Isaias under the HIP-WI Endorsement that includes Duplin County and Sampson County and their adjacent counties.

3. The Court grant Plaintiffs their reasonable attorney fees and costs as allowed by law; and,

4. For such further and other relief as the Court deems appropriate.

Respectfully submitted this the 4th day of December, 2020.

**HUTCHENS LAW FIRM**
/s/ J. Scott Flowers
J. Scott Flowers
State Bar No. 31525
Damón Gray II
State Bar No. 50740
P. O. Box 2505
Fayetteville, NC 28302
Telephone: (910) 864-6888
Facsimile: (910) 867-8732
*Attorneys for Plaintiffs*
Email: scott.flowers@hutchenslawfirm.com